Case No. 24-2097. We begin with Mr. Moran. Mr. Moran, you reserved two of your ten minutes for rebuttal. Yes, Your Honor. You may proceed when you're ready. May it please the Court, I'm John Moran for the appellant Robert Blanford. We ask this Court to reverse or at least remand the Commissioner's denial because the ALJ misunderstood the clinical record, ignored critical gaps, and misapplied 416-926. I'll focus on four points. Number one, stability. Stable is not equal to able to work. Your Honor, first I would just note that claimant's long-time treating physician was of the opinion that the claimant's. Which treater is that you're referring to? Yes, that's Dr. Charles, Nurse Practitioner Charles, was of the opinion that the claimant's residual functional capacity was less than sedentary. He based that based on his findings of dysphoric mood, dysmic effect, mildly impaired memory, below average IQ, fair insight. So how do we deal with that? So that is one of the two primary treaters for Mr. Blanford, right? That's correct. And sort of my assumption is, and tell me if I'm wrong, that the usual structure of this is you have that nurse practitioner is giving the medications and sees Mr. Blanford, what, once a month or once every three months? Once a month. Once a month. And then there's a social worker, Ms. Broncaro. That's correct. Who sees Mr. Blanford twice a week. Correct. And Ms. Broncaro identified fewer restrictions and fewer limitations than did the nurse practitioner, right? Yes. So how do we deal with those two together? I understand you're focused on Nurse Practitioner Charles, which makes sense, but those two sort of come as a package in a sense, right? How do we reconcile those two and how do we, with those both in the record, find that the ALJ's decision was not appropriate? Well, Your Honor, first of all, I would note that the ALJ found, didn't adopt any of the opinions in the record. And particularly, he found that Dr., well, the social worker Broncaro's opinion was unpersuasive. So it was too, thought it was too few limitations, right? Correct. And thought the nurse practitioner had too many limitations, right? And on that point, I would note that the social worker indicated that Mr. Blanford required a supportive work environment. Okay. I equate a supportive work environment with a sheltered work environment. That is not full-time competitive work. If you need support in the workplace, you cannot function in a competitive market. So you view that as the clinical meaning of a supportive work environment as opposed to just a place where your co-workers and superiors are supportive of you. Correct. The other part of it is, first of all, she's not an acceptable medical source under the regulations. If she said that he had all marked limitations. Social workers under the new regulations cannot, their opinions cannot be regarded at all? They're not an acceptable medical source. So the ALJ is not. But is that more meaningful now, post? Yes. Okay. In what way? Okay. The ALJ can consider the social worker's opinion, but the ALJ could have also, if she gave all marked limitations, said that she was discounting her opinion because she's not an acceptable medical source under the regulations. So you can't, I don't think you can have it both ways. What would you say he could have? Was he required to make that finding? If, on the hypothetical that you suggest? He's not required to, but he is not required to address the opinion of a social worker under the regulations. But if he's not required to, but is permitted to, what is the problem? Well, I think this is the problem. As I indicated, the social worker indicated that he required a supportive work environment, and we don't have all of the records from that facility. So if you have the doctor, the acceptable medical source, who's treating him over the years. But wait, he's not a doctor. Well, he's a nurse practitioner. He's not an MD at all. I agree. He's a nurse practitioner. But a nurse practitioner is an acceptable medical source under the regulations. Okay? So the nurse practitioner was of the opinion that the claimant's condition was work preclusive. The ALJ. Whether it's work preclusive is not a medical decision. Whether it's work preclusive is the judgment of the ALJ based on a finding about residual functional capacity and the opinions of the vocational expert. The doctor says what the person is physically or mentally capable of doing in the doctor's opinion, right? Correct. And in this case, the nurse practitioner was of the opinion that his mental health condition resulted in marked limitations in social function and ability to function. Those go to, those are medical opinions. And is the ALJ required to adopt those medical opinions, or is it not the case that the ALJ is permitted to assess those opinions against the totality of the record and the underlying medical records to the extent they are available? The ALJ is required to assess the consistency and supportability of the opinion with the record. You, to say that the opinion is not supported when you didn't try and get the records from the doctor. Well, wait. When you say didn't try to get the records, I may be mistaken because I've been here for three days now and had a couple of these cases, and sometimes the details, I'm afraid, blur. But my recollection is, and am I wrong about this, that there was an effort to get the underlying records that the provider said they wouldn't provide them? The provider would not provide it to our office. I see no attempt in the record where the judge himself indicated that he wanted the record. He didn't attempt to subpoena the records. He didn't subpoena the records, that's true. Did anyone ask him to? No, but we alerted him to the fact that those records were missing. And when we have the opinion of the treating doctor who indicates in his RFC assessment what his opinion is based on, so his opinion is supported by the record, and we have the opinion of Social Security's doctor who indicated that the claimant had marked limitations in all domains based on his evaluation. So you have the doctor that he examined, the nurse practitioner that examined him, supported his findings as to the claimant's residual functional capacity with dysphoric mood, dysmic effect, mildly impaired memory, below average IQ. His opinion was supported by the record. The opinion of the consultative examiner, the second consultative examiner, was supported by his findings, his examination. The opinion of Dr. Riza that the claimant's residual functional capacity... Is it your position that the ALJ has to base his or her opinion on the... their opinion has to mirror that of a medical professional? It is not my... I'm not claiming that. I thought in response to one of Judge Miriam's questions, you were implying that the ALJ took bits and pieces from each provider and that somehow that was wrong. Well, the ALJ did take bits and pieces, and I think it is problematic, which I think this Court has suggested for an ALJ to play doctor, particularly when it involves mental health. Problematic in what sense? Does the case law prohibit the ALJ from assessing the various medical providers' opinions and choosing, deciding to credit or not based on the entirety of the record? Well, I think this is where... Portions? I think this goes to a misunderstanding of the claimant's mental health condition, and that's where it becomes a problem. The claimant has a severe mental health condition, and the ALJ points out consistently that the claimant's condition is indicated to be stable, but stable does not equal the ability to function. Okay? And every time that there's... I can't say every time, but almost every time there's an indication of stability, there's also an indication of sometimes hallucinations, sometimes paranoia. There's indication of dysphoric mood. I think you've answered my question, though. Thank you. Thank you, Your Honor. Thank you, counsel. You've reserved two minutes. Do you want to just wrap up in the next couple of seconds? I would just note that the claimant was getting disability benefits. He went to prison. As a result of his incarceration, he lost his benefits. As a condition of parole, he had to re-engage in treatment. He's on significant psych meds, and his treating nurse practitioner is of the opinion that he cannot work. All right. Thank you. All right. We'll hear from counsel for the commissioner. Okay. Good morning, Your Honors. Timothy Rizell on behalf of the commissioner, and may it please the Court. The ultimate issue in this case is whether substantial evidence supports the AOJ's finding that Mr. Blanford had the mental capacity to perform a range of simple, low-contact work, rendering him not disabled. The answer we respectfully submit is yes. The Court should therefore affirm the commissioner's decision. Mr. Blanford applied for supplemental security income in April 2020 following a period of incarceration, claiming various physical and mental impairments. He began mental health treatment, therapy, and medication management, and he often made good progress according to the notes. There was no need for a higher level of care, although his treatment was inconsistent, including periods where he declined to take any medication, citing a lack of symptoms. The objective findings in these notes were relatively benign, with no significant abnormalities, even when he had periods of claimed exacerbation of symptoms. His own counselor opined, as noted previously, that he could work in a low-stress, supportive, slow-paced work environment. And on that point, we would say that counsel for the other side has provided no evidence as to what the counselor meant by supportive. And given the assessment of generally mild limitations, it is unlikely that the counselor meant any kind of seriously supportive environment. And finally, Your Honors, the record showed that Mr. Blanford lived independently with his aunt, maintained his personal care, could manage his finances, was able to shop and socialize with family, among other activities. So at bottom, Your Honors, the ALJ properly formulated the RFC based on the record as a whole, considering multiple relevant factors. Also, in evaluating opinions and prior administrative medical findings, the ALJ properly discussed the supportability and consistency with respect to each opinion, and supported his analysis with substantial evidence. Can you respond to your opponent's claim that the ALJ's finding is an error because there were records missing from one of the opinions that the ALJ considered or relied on? Yes, Your Honor. The standard is whether the evidence is sufficient to decide the issue. So while the agency did attempt to obtain records, treatment notes from Ms. Charles, they were told that the agency does, I'm sorry, that Fortune Society, for whom Nurse Charles works, does not release clinic notes. The claimant did not ask the ALJ to issue a subpoena for the notes, and they could not obtain the notes themselves. And additionally, when you look at the information in the treatment summaries that are available, it is very detailed information, including progress, symptom reports, medication changes, effectiveness of medication, and other information. And you notice in there, there is no recommendation for any higher levels of care, even when he is, even after periods where he's not taking any medication. And that is also true when you look at Ms. Look's notes from March 2022. When he returns to treatment after a period of being off Haldol, he was off Haldol since June 2021. He declined to go back on medication, saying he doesn't have symptoms and doesn't need to go back on medication. So we submit the information. Any information that would be in those notes from Nurse Charles was not necessary to decide the case, and the ALJ reasonably found generally moderate limitations that were consistent with the RFC. Let me ask your view of post-treating physician. In the post-treating physician world that we are now in, how do we think about the difference between acceptable medical sources, and which is now slightly expanded, but it's still basically doctors, psychologists, APRNs, and then in these little narrow fields, optometrists and podiatrists. But in the post-treating physician world, how much difference does that make in this process? Because, you know, your opponent says you can't weigh the social worker and the nurse practitioner equally here. Yes, that is a very good question. An acceptable medical source designation is important because an acceptable medical source is necessary to diagnose and establish a medically determinable impairment at step two. Whether an ALJ can consider whether someone is an acceptable medical source, but under the new regulations, the most important factors are supportability and consistency, and not the status as an acceptable medical source. That may be able to be considered, but it is a secondary factor. Is one of the factors still specialty? I'm trying to picture the list of factors, right? Yep. The treating relationship, the duration of that relationship, the frequency, but also the specialty of the provider, right? Yes, that is correct. So it could come into play there if you have a great deal of training versus not a lot of training, right? Absolutely. Yes, that's correct. But once we're past step two, there's not a clear delineation in the sense that only acceptable medical sources can offer certain kinds of information. Is that right? Yes, that is correct. Okay. Now, to go into the issues in a little bit more detail, the ALJ in assessing the RFC appropriately considered that plaintiffs experienced periodic exacerbations of symptoms. The ALJ acknowledged this and gave a very restrictive RFC limitations to simple tasks, low contact environment including no public contact, occasional changes, and occasional decision making. The ALJ reasonably considered that Mr. Blanford received conservative, inconsistent care, and that even when he was not taking any medication or undergoing any treatment, he didn't require any higher levels of care, no hospitalizations, no partial hospitalization programs, no intensive outpatient programs. He considered that the relatively benign mental status examinations were inconsistent with disabling symptoms, although there were some intermittent eye contact, deficits, flat affect, some unproductive speech, but generally cognition, memory, attention, and concentration were normal or mildly impaired. And he was generally cooperative without significant behavioral issues. The ALJ also considered activities of daily living that weren't consistent with disability, as I stated earlier. These factors were all proper and supported the RFC. And I should also add that he considered opinion evidence, including Dr. Butler, I'm sorry, Dr. Bruni, whose RFC he found persuasive based on consistency with the record overall. There were two other opinions, LMSW Bracero, the counselor, and Dr. Butler, who reviewed a greater degree of evidence and found no significant limitations, as did LMSW Bracero. The ALJ disagreed favorably to plaintiff and found that there were some significant restrictions, now based in part on the symptoms and the symptom exacerbations, but not enough to be disabling. And if your honors have no further questions, the government would like to rest on his brief. All right. Thank you, counsel. Thank you. Mr. Moran, you have reserved two minutes. Your honors, in terms of consistency, three acceptable medical sources actually examined this claimant who is suffering from mental illness. It is crucial in these type of cases to examine somebody with this type of condition, because what the mental health provider is doing is making diagnostic impressions from what he observes and making conclusions based on those impressions. The two consultative examiners that examined the claimant on behalf of Social Security were physically in the presence with him, provided assessments that were inconsistent with full-time competitive work. The claimant's nurse practitioner that was examining the claimant, developing impressions with respect to the claimant's mental health, was of the opinion that based on his long-term treatment of the claimant, the claimant was unable, the RFC was inconsistent with full-time competitive work. Dr. Reiser examined the whole record and examined the claimant and was of the opinion that the claimant's residual functional capacity was inconsistent with competitive work. This is not the case of a back where you can see it on an MRI. With a mental health condition, you need to be physically present with the claimant to do a fair assessment. And if the ALJ felt the doctor, that nurse practitioner Charles' opinion was not supported, the ALJ had a duty to at least notify counsel or subpoena the records or make an attempt on his own to secure those records. I believe the record supports a finding of disability, or at the very least I believe that this Court should find that the ALJ did not properly review the opinions here based on consistency and supportability. Thank you, Your Honor. Thank you, counsel. Thank you both. We will reserve decision in that matter.